**CENTURY FIRE SPRINKLERS, INC., Appellant,**

v.

**CNA/TRANSPORTATION INSURANCE CO., Respondent.**

No. WD 57479.

Missouri Court of Appeals, Western District.

June 27, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

Anthony Romano, Kansas City, for appellant.

Barry McCormick, Overland Park, KS, for respondent.

Before: LOWENSTEIN, P.J., ULRICH and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

The threshold question presented in this case is: In a suit by an insured against its insurance company, may the insurer rely on exceptions in the policy as a defense via letters of declaration and in answers to discovery, or must the insurer raise the defense of an exclusion by way of an affirmative defense?

## FACTS

This appeal arises from the trial court's order of summary judgment in favor of respondent, CNA/Transportation Insurance Company ("CNA"), and against appellant, Century Fire Sprinklers, Inc. ("Century"). The summary judgment was a result of Century filing a suit against CNA, who was Century's Commercial General Liability insurer, for breach of contract and vexatious refusal to pay after CNA refused to defend Century in a suit brought against it by a company for whom Century had installed a fire protection sprinkler system.

Century is a corporation engaged in the design and installation of fire suppression systems in buildings. Century purchased a policy from CNA which provided that CNA would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The Policy defines "property damage" as including "[l]oss of use of tangible property that is not physically injured...." The Policy further provides that it applies to "bodily injury" and "property damage" if they were caused by an "occurrence," as long as the bodily injury or property damage occurred during the policy period and within the geographical area contemplated by the Policy. An "occurrence" is defined as "an accident...." Paraphrased, the portion of the exclusions in the policy here denominated as the "business risk" exclusions, do not insure property damage or impaired property due to a deficiency of the insured's work or damages claimed by others for expense or loss of use incurred by others from the insured's work, including work which is withdrawn from use because of a defect or deficiency.

While insured by CNA, Century subcontracted to non-party Clayco Construction Company ("Clayco") to design and install a fire sprinkler system in a building in St. Louis, Missouri. Clayco then filed suit against Century in October 1994, during the period in which CNA insured Century, for breach of contract in that Century failed to properly design and furnish the fire protection system it had subcontracted to furnish. Clayco also alleged in a second count that Century negligently designed and installed the fire system. These allegations and the underlying Clayco lawsuit arose out of the base problem that "the relevant governmental authorities had rejected the fire protection system [designed and installed by Century] as designed in that it was insufficient for the kind of

facility in which it was installed." As a result, the building owner was unable to occupy the building.

Century tendered its defense of the Clayco lawsuit to CNA on three different occasions between 1994 and 1996. CNA declined to defend Century against the suit all three times. CNA cited the following three reasons for its refusal to defend: 1) none of the allegations in Clayco's petition indicated that an "occurrence" had taken place within the terms of the Policy; 2) the injury alleged by Clayco did not constitute bodily injury, property damage, personal injury or advertising injury covered under the Policy (the so-called 'business risk' exclusions); and 3) the contract forming the basis for Clayco's first count in its petition was not an "insured contract" under the Policy.

After CNA consistently refused to defend Century, Century filed suit for breach of contract and vexatious refusal to pay against CNA, alleging CNA wrongfully refused to assume Century's defense in the Clayco lawsuit. In response, CNA generally denied each allegation set forth in Century's petition, but did not assert any affirmative defenses.

After discovery was completed, Century filed a Motion for Summary Judgment against CNA asserting CNA had a duty to defend Century in the Clayco lawsuit. CNA filed an Opposition and Cross–Motion for Summary Judgment, denying its duty to defend Century based on the "business risk" exclusions set forth in the Policy. Century responded to the Cross–Motion for Summary Judgment by arguing that CNA's failure to raise the exclusions as affirmative defenses operated as an express waiver of any exclusions. Century also argued in the alternative that the property damage at issue was not excluded under the "business risk" exclusions.

The trial court entered summary judgment in favor of CNA and against Century, holding that CNA had no duty to defend Century under the Policy. The trial court stated:

The court finds the "Business Risk Exceptions" ("BRE's") in the insurance contract...exclude coverage for the instant fact situation. Furthermore, the Court finds that the Defendant did not waive these exceptions and clearly cited to them in its declination letters. Moreover, the Petition in the underlying action of [Clayco] does not pray for any property damage that is not excluded under the BRE's. Clayco merely prays for $40,000 to hire a new contractor to redesign and install the fire sprinkler system, which is clearly Plaintiff's work product, and for attorneys for filing said action. Plaintiff's work product is excluded in the policy under the BRE's. Thus, there was no potential of coverage. Therefore, Defendant did not need to defend the underlying action.

## STANDARD OF REVIEW

Appellant's claim was decided on summary judgment. Accordingly, the applicable standard of review is as follows:

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Rodgers v. Threlkeld,* 22 S.W.3d 706 (Mo. App.W.D. 1999), citing *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted).

Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp.,* 854

S.W.2d at 377. When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences. *Id.* at 376.

## POINTS RELIED ON

■ The appellant, Century, first contends the trial court erred in granting respondent's summary judgment based on the policy exclusions because respondent failed to assert the policy exclusions as an affirmative defense in its answer and, therefore, waived such defense. CNA argues that insurance policy exclusions are not affirmative defenses, and as a result, there was no requirement to assert them in response to CNA's petition. CNA additionally argues its general denial was appropriate as the appellant had notice of the policy exclusions via the denial letters from respondent, and as such, the policy exclusions are not waived as a defense.[1]

Rule 55.08 states that a party "shall set forth all applicable affirmative defenses and avoidances, including but not limited to...," and then lists several affirmative defenses. Although insurance policy exclusions are not specifically listed in Rule 55.08, the "including but not limited to" language makes it clear that there are additional affirmative defenses required to be pled that are not listed in the rule.

■ An affirmative defense is one that may defeat a plaintiff's cause of action because of facts which allow the defendant to avoid legal responsibility. *ITT Commercial Finance Corp.,* 854 S.W.2d at 381. As a matter of procedural law, if an affirmative defense is not pled, it results in a

waiver of that defense. *Leo's Enterprises, Inc. v. Hollrah,* 805 S.W.2d 739 (Mo.App. 1991). Affirmative defenses to suits upon insurance contracts must be pled. *Calvert v. Safeco Ins. Co. of America,* 660 S.W.2d 265, 270 (Mo.App.1983). Failure to plead an affirmative defense constitutes a waiver by the insurer of the affirmative defense. *Id.* at 270.

■ Therefore, the initial question for this court remains: Is the application of an insurance policy exclusion an affirmative defense which must be pled in the trial court by the insurer or it may be waived? Although there are several cases in Missouri that touch on this issue, none seem to answer the question directly.

■ "It is well established under Missouri law that an insurer may, by its conduct, waive defenses which are otherwise available under a policy." *Calvert, supra* citing *Kingsland v. Missouri State Life Ins. Co.,* 228 Mo.App. 198, 66 S.W.2d 959 (1933). Where a loss, otherwise within coverage of an insurance policy, is not covered by reason of exclusion, the insurer must plead the exclusion as an affirmative defense. *Shaffer v. Federated Mut. Ins. Co.,* 903 S.W.2d 600 (Mo.App.1995) citing *Kammeyer v. Concordia Telephone Co.,* 446 S.W.2d 486, 491 (Mo.App.1969) (*Shaffer* goes on to make the distinction that it is not necessary to plead an affirmative defense to policy provisions that merely define coverage.)

"If appellant did have a defense based on the exception [to the insurance policy], in order to take advantage of it, appellant would have had to set it up as an affirmative defense." *Kammeyer,* 446 S.W.2d at 491. (citations omitted). "It is a general rule of law that, having denied liability for a stated reason, an insurer may not, later assert a different one." *State Farm Mut. Auto. Ins. Co. v. Central Sur. & Ins. Corp.,*

---

1. With regard to construction of an insurance contract, an insurer claiming applicability of an exclusion clause has the duty to prove application, and such clauses are strictly construed against the insurer. *Hocker Oil Co., Inc. v. Barker–Phillips–Jackson, Inc.,* 997 S.W.2d 510, 516 (Mo.App.1999).

405 S.W.2d 530 (Mo.App.1966) (citations omitted).

Other jurisdictions have also held similarly, but have gone one step further in directly stating that an insurance policy exclusion is an affirmative defense that *must* be pled. "[A]n exception to the insurer's liability is an affirmative defense that is waived if not pleaded." *Stucker v. Hartford Accident & Indemnity, Co.*, 220 Ark. 475, 248 S.W.2d 383, 384 (1952). "[The] necessity of raising insurance coverage exception in answer to insured's complaint was not eliminated merely because the affirmative defense may have been stated in responses to interrogatories, in correspondence exchanged between the parties, and in depositions taken prior to trial, none of which constituted a pleading or a defense to a pleading." *Nat'l Security Fire and Casualty Co. v. Shaver*, 14 Ark.App. 217, 686 S.W.2d 808 (1985).

"A defense based on an exception or exclusion in a policy is an affirmative one, and burden is cast upon the insurer to establish it." *Rothstein v. Aetna Ins. Co.*, 216 Pa.Super. 418, 268 A.2d 233, 235 (1970). Article 21.58(b) of the Texas Insurance Code specifically states that insurers must plead and prove the application of a policy exclusion as an affirmative defense. *See also Tex. Rule of Civil Proc., Rule 94*. Further, an insurer which filed only a general denial in suit to recover on a policy waived any possible defense created by an exemption clause of the policy. *American Life & Annuity Ins. Co. v. Dancer*, 240 Ark. 128, 398 S.W.2d 529 (1966).

Contrary to the above, however, is other Missouri caselaw that deals with the doctrines of waiver and estoppel and are inevitably implied and intertwined in the issues of this appeal. A Missouri case stated the following: "[I]t has been held by the weight of authority that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss of risk, which by the terms of the policy is expressly excepted or otherwise excluded.* * * There are, however, broad expression in some of the cases to the effect that the company may waive a defense of lack of coverage, or may by its conduct become estopped to deny that the loss is within the terms of the contract." *Blew v. Conner*, 310 S.W.2d 294, 303 (Mo.App.1958) citing 45 C.J.S. Insurance Sec. 674(a), p. 616.

Another case, *Safeco Ins. Co. v. Marion*, 676 F.Supp. 197 (E.D.Mo.1987), deals directly with the issues of waiver and estoppel, and appears to be very similar to the facts presented in this appeal. In *Safeco*, the insurer raised the policy exclusion for the first time in a second-amended counterclaim for declaratory judgment against the insured. The court held the insurer was not estopped from asserting a policy exclusion where the policy unambiguously excluded such coverage, though the insurer's initial denial was not on the grounds of the policy exclusion. However, the present case is distinguishable because not only did CNA initially not include the policy exclusion as an affirmative defense, but even to this day it has not pled the "business risk" exclusions as an affirmative defense. Further, it has not been determined in the present case whether or not the policy unambiguously excluded Century's claim, which is the appellant-insured's second point. Because of the disposition of the first point, the second point will not be addressed.

It seems clear to this court that in the case at hand, CNA would have had ample opportunity to amend its answer to include the "business risk" exclusions as an affirmative defense prior to this appeal. Century brought the failure to plead the exclusions as an affirmative defense to both the court's and respondent's attention over a year ago in its Reply Motion for Summary Judgment filed on April 5, 1999. Had CNA requested leave to make this amendment, which should have been freely granted by the trial court, this court would now be able to decide this case on the merits rather than on a procedural issue. Although it appears that the policy lan-

guage in question does exclude the claims raised by the party suing Century, at no time did CNA amend its answer to add the affirmative defense of the policy's "business risk" exclusions, so this court is forced to do just that.

This court holds that in Missouri, a defense based on an exclusion to an insurance policy is an affirmative defense, and the burden to establish the exclusion is on the insurer. Such a defense must be pled to be relied upon, or it may be waived. A defense based on an exclusion may not be established by things such as answers to interrogatories or correspondence. Yet, this conclusion inevitably leads to the question of whether or not the respondent insurer in the present case may now amend its pleadings to add the affirmative defense of the policy's "business risk" exclusions on remand. Although it appears this question was answered in the negative in *Calvert*, 660 S.W.2d at 271, more recent cases may have changed that conclusion.

In *Calvert*, the court cited *Hounihan v. Farm Bureau Mut. Ins. Co. of Missouri*, 523 S.W.2d 173, 175 (Mo.App.1975), and held that "[T]he Hounihan rule" (by first denying liability [based upon one or more particular defense(s)], the defendant was foreclosed from later advancing a different ground for denying coverage) "is a well-established exception to the broader provision of Rule 55.33 which states that a court should, within its discretion, liberally allow amendments to pleadings." The *Calvert* court noted that *Kammeyer*, 446 S.W.2d at 490, went one step further then *Hounihan* and added a twist to the general rule when it stated, "[h]aving denied coverage on a specific ground, appellant may not thereafter deny coverage on a different ground ... [a]t least this is true if the original denial was made with full knowledge of the facts." In sum, until 1994 the *Hounihan*, *Kammeyer*, and *Calvert* courts held that once an insurer who possessed full knowledge of the facts denied liability on one ground, they could not later assert a different ground.

However, the Supreme Court of Missouri further analyzed this issue in *Green v. City of St. Louis*, 870 S.W.2d 794 (Mo. 1994). The *Green* Court cited *Heins Implement Co. v. Missouri Highway & Transportation Commission*, 859 S.W.2d 681, 684 (Mo.banc 1993), and retreated from the previous interpretation of Rule 55.08 stating that if an affirmative defense is not pled it is waived, and held that after *Heins*, issues not raised in the answer are simply not raised in the lawsuit. In *Green*, the court held that the summary judgment must be reversed and remanded because after applying the factors in *Stewart, see infra*, the record was insufficient to determine whether summary judgment should have been entered on the grounds of the unpled affirmative defense.

The *Heins* court then went on to analyze a defendant's ability to amend an answer to include an affirmative defense as set out in Rule 55.33(a). "The right to amend is not absolute, but leave is to be freely given if justice requires." *Green, supra*, citing *Downey v. Mitchell*, 835 S.W.2d 554, 556 (Mo.App.1992). "The factors the trial court should consider in determining whether to permit amendment of an answer include: (1) the hardship of the moving party if the request is denied; (2) the reasons for failure to include the matter in a designated pleading; and (3) the injustice or prejudice caused the opposing party if the request is granted." *Green, supra* citing *Stewart v. Sturms*, 784 S.W.2d 257, 262 (Mo.App.1989).

In summary, whether CNA is barred from now amending its answer and adding the affirmative defense of the insurance policy's "business risk" exceptions remains for the trial court to determine after applying the above factors.

## CONCLUSION

This court holds that an insurance policy exclusion is an affirmative defense that must be pled or may be waived. It was an error of law to conclude the declination letters of CNA sufficed to raise the policy exclusions in lieu of pleading the policy

language as an affirmative defense. In light of the conclusion that the "business risk" exclusions must be pled as an affirmative defense, the case is remand to the trial court. Whether or not CNA may amend its answer on remand to include the "business risk" exclusions is a matter for the trial court to determine after applying the relevant factors set forth above in *Stewart* and *Green, supra.*

In an attempt to fashion a guide to the bar, the court sets out the following: Reliance by an insurer on an exclusion to the policy must be pled by the insurer pursuant to Rule 55.08 ("In a pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses ...."). Failure to plead on exclusion as an affirmative defense may constitute a waiver, subject to the trial court's application to the case of language from Rule 55.33 that allows leave to amend pleadings, "when justice so requires."

The cause is reversed and remanded to the trial court to exercise its sound discretion as to whether to allow CNA to so amend. *Duncan v. Duncan,* 751 S.W.2d 763, 771 (Mo.App.1988).

All concur.