Diana **BELT**, Plaintiff–Appellant,

v.

**WRIGHT COUNTY, MISSOURI,**
Defendant–Respondent.

No. SD 30939.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 26, 2011.

---

James E. Corbett, Springfield, MO, for Appellant.

Kevin L. Austin, Springfield, MO, for Respondent.

DON E. BURRELL, Judge.

Diana Belt ("Plaintiff") appeals the trial court's entry of summary judgment in favor of defendant Wright County, Missouri ("County") on her claim that County negligently failed to warn her about a dangerous intersection ("the intersection") which caused her to be injured in an automobile collision that occurred within the County-owned portion of the intersection. Because County failed to show that it was entitled to judgment as a matter of law, we reverse the judgment and remand the case for further proceedings.

## Standard of Review

Our review of a grant of summary judgment is de novo. *City of Springfield v. Gee*, 149 S.W.3d 609, 612 (Mo.App. S.D. 2004). Consequently, we give no deference to the trial court's decision and simply employ the same criteria the trial court should have used in deciding the motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo.App. S.D.2007) (citations omitted). "We view the record in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the rec-

ord." *Id.* (citing *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)).

## Analysis

### *Plaintiff's Claim*

Plaintiff claimed in her "Second Amended Petition" ("petition") that County's portion of the intersection "was in a dangerous condition because there was not sufficient sight distance for motorist [sic] traveling east on Mountain Valley to see motorists traveling south on Peach Corner or for motorist [sic] traveling south on Peach Corner to see motorist [sic] traveling east on Mountain Valley to avoid a collision (hereinafter referred to as the 'Dangerous Condition')." Plaintiff claimed the Dangerous Condition created a reasonably foreseeable risk of harm of the type she actually suffered and that County either knew, or could have known by the exercise of ordinary care, about the Dangerous Condition in time to have taken measures to protect her against it. We presume Plaintiff's claim was asserted in a manner designed to allow it to fall within the statutory exception to what would otherwise provide County with sovereign immunity to her tort claim. *See* § 537.600;[1] *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell*, 91 S.W.3d 612, 615 (Mo. banc 2002) ("Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent").

The government has provided such consent in regard to

[i]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from

---

1. All statutory references are to RSMo 2000.

the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

§ 537.600.1(2).

*County's Motion for Summary Judgment*

As the defending party, County could "establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58–59 (Mo. banc 2005).

County's motion was based on the first and third alternatives. It contested Plaintiff's ability to prove the necessary element that the intersection was in a dangerous condition and also asserted that because it was a third-class county, County was prevented by law from taking any actions to protect Plaintiff against the Dangerous Condition. The facts County alleged were undisputed and sufficient to show that it was entitled to a judgment in its favor as a matter of law were the following:

1. On or about April 11, 2004, [Plaintiff] was operating a motor vehicle at the intersection of Mountain Valley Road and Peach Corner Drive in Wright County, Missouri ["the intersection"], when Defendant Carol Williams was driving her vehicle on Peach Corner Drive and collided with Plaintiff's vehicle at said intersection.

2. Mountain Valley road is a two-lane road that runs generally east and west. Plaintiff, at the time of the collision, was eastbound. Peach Corner Drive is a two-lane road that runs generally north and south. Defendant Williams was travelling [sic] south at the time of the collision.

3. Plaintiff's cause of action against [County] is based on the "dangerous condition" exception to sovereign immunity. [citing and reprinting the following paragraph from the petition:]

 At the time of the Collision the Intersection, including [County's] portion, was in a dangerous condition because there was not sufficient sight distance for motorist [sic] traveling east on Mountain Valley to see motorists traveling south on Peach Corner or for motorist [sic] traveling south on Peach Corner to see motorist [sic] traveling east on Mountain Valley to avoid a collision (hereinafter referred to as the "Dangerous Condition").

4. Plaintiff alleged damages as a direct and proximate result of the "Dangerous Condition."

5. The Dangerous Condition alleged by Plaintiff is two-fold. First, Plaintiff maintains that the Dangerous Condition was that there were no stop signs. Second, Plaintiff maintains that the sight distance was limited due to "brush and weeds blocking the view."

6. Plaintiff was allegedly prevented from seeing Defendant Williams due to insufficient sight distance on the northwest corner of the intersection, and, conversely, Defendant Williams

sight distance was allegedly obscured due to "brush and weeds" also on the northwest corner of the intersection.

7. Missouri Department of Transportation (hereinafter "MoDot") had responsibility, and undertook the responsibility, of maintaining [the intersection].

8. MoDot had the responsibility for the growth of vegetation in its system. And MoDot has the responsibility for making sure the vegetation does not grow at [the intersection].

9. MoDot owns the area marked in yellow on the deposition exhibit 12, which includes portions of Mountain Valley Road and Peach Corner Drive, including the following corners of the intersection where the accident occurred: southeast, northeast and NORTHWEST.

10. MoDot had the responsibility for mowing the areas in yellow (including the northwest corner of the intersection) and keeping down the vegetation thereon—and did mow in the past[.]

11. In addition, MoDot has the responsibility for placement of a stop sign for southbound traffic on Peach Corner at [the intersection].

12. And MoDot did place a stop sign for traffic going southbound on Peach Corner Drive.

13. MoDot would have placed the sign sooner had it realized that it was their property.

(Capitalization as in original.)

In her response to County's motion, Plaintiff admitted that all of the facts alleged by County were true except paragraphs 5 and 7. Under a heading entitled "Additional Material Facts That Remain In Genuine Dispute[,]" Plaintiff reasserted that the Dangerous Condition was the intersection, not the lack of stop signs or a hillside covered with brush. Perhaps realizing that this disputed material fact would prevent the entry of summary judgment in its favor, County replied to Plaintiff's contention by stating that it "denies that there was any dangerous condition involved in [the collision]. However, for purposes of this motion for summary judgment, [County] will admit that the dangerous condition existed on the northwest side of the intersection and that the dangerous condition was the hillside itself as well as brush and weeds on the hillside that caused there not to be adequate sight distance." But even this purported "admission" was not in agreement with Plaintiff's actual claim. Plaintiff did not claim that the hillside was dangerous. Her claim was that the intersection was dangerous due to insufficient sight lines that resulted from the presence of the hill and the brush on it.

### Dangerous Condition Exception to Sovereign Immunity

Based on its re-characterization of what Plaintiff claimed constituted the Dangerous Condition, County then asserted a theory not presented in its motion for summary judgment: the actual dangerous condition—the brush on the hillside—was located on property not owned by County. County could not have it both ways. It could either choose to continue pursuing its summary judgment attempt by admitting the existence of the dangerous condition as asserted by Plaintiff or acknowledge that there was a material factual dispute. In any event, County's assertion that other dangerous conditions existed did not logically negate the element of Plaintiff's claim that the intersection itself was a dangerous condition.

County's motion did not claim that the undisputed facts it asserted were sufficient to negate any of the other elements of Plaintiff's claim. As a result, the trial

court correctly found that County was not entitled to a summary judgment in its favor based on its claim that Plaintiff could not prove the existence of a dangerous condition on County's land. But the trial court then granted summary judgment in favor of County based on its alternate legal theory (that assuming Plaintiff could prove the Dangerous Condition and the other elements of her claim) County could not be found liable because it was actually prevented by law from taking any measures to protect motorists from the dangerous condition.

### Affirmative Defense of Impossibility

 "An affirmative defense declares that even if the allegations in the plaintiff's petition are established, the plaintiff cannot prevail because additional facts exist which avoid the legal responsibility of the defendant." *Rodgers v. Czamanske,* 862 S.W.2d 453, 459 (Mo.App. W.D.1993).

After assuming that the intersection constituted a dangerous condition, the trial court nonetheless found that summary judgment in County's favor was appropriate because "[a]t the time of the collision, [County] was a third class county" and County therefore "had no duty warn [sic], remedy, barricade, or remove any dangerous condition with respect to that portion of the intersection under its control [the southwest corner]" because "as a third class county, [it] had no duty to erect stop signs, yield signs, or any other warning sign or traffic control device to alert motorists of the dangerous condition of [the intersection]."

County's statement of uncontroverted facts does not include an assertion that County was a third-class county at the

time of the collision. Assuming, without deciding, that the trial court could take judicial notice of a fact not asserted in County's motion, the trial court's summary judgment on this ground was improper for a more basic reason. County's claim that there were additional facts which allowed it to avoid its duty under § 537.600 to protect against known dangerous conditions constituted an affirmative defense. *Rodgers,* 862 S.W.2d at 459. And while County's answer did assert several affirmative defenses, this claim was not among them.

In *Green v. City of St. Louis,* our high court granted transfer of an Eastern District case "to address the issue of whether a defendant may properly raise an affirmative defense in a motion for summary judgment when the affirmative defense was not raised in the defendant's answer." 870 S.W.2d 794, 795 (Mo. banc 1994). Mr. Green claimed the trial court could not have granted summary judgment in favor of the city on the ground that he had failed to exhaust his administrative remedies because that defense was waived when the city did not assert it in its answer to his petition. *Id.* at 796. In rejecting that argument, our high court held that "[t]he rule requiring exhaustion of administrative remedies is one of subject matter jurisdiction.[2] *Because subject matter jurisdiction can be raised at any time,* the city was not prohibited from raising the defense for the first time in its motion for summary judgment." *Id.* (citing Rule 55.27(g)(3)) (emphasis added).

More recently, in *Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc.,* our high court reaffirmed the

---

**2.** We presume our high court would no longer consider this particular defense an issue of subject matter jurisdiction under its more recent jurisprudence as set forth in *J.C.W. v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009)

and *McCracken v. Wal–Mart Stores East, LP,* 298 S.W.3d 473 (Mo. banc 2009). *See Whithaus v. The Curators of the Univ. of Missouri,* 347 S.W.3d 102 (Mo.App. W.D.2011).

principle that an affirmative defense "must be set forth in the answer or it is waived." 279 S.W.3d 179, 187 (Mo. banc 2009) (citing Rule 55.08 and *Riddell v. Bell,* 262 S.W.3d 301, 305 (Mo.App. W.D.2008)). As a result, County is not entitled to judgment as a matter of law based on an affirmative defense it waived by failing to assert it in its answer to Plaintiff's petition.

Even if County had not waived any such defense, the authority it cites in support of its claim is 23 Op. Att'y Gen. 88 (1988 WL 426920) (1988), in which County alleges the Attorney General opines that third-class counties lack the necessary statutory authority to "regulate traffic on a county road." Attorney General opinions are not "binding upon the courts or the citizenry[.]" *Mesker Bros. Indus., Inc. v. Leachman,* 529 S.W.2d 153, 158 (Mo. banc 1975). County cites no binding legal authority for the proposition that a third-class county is prohibited by law from warning motorists about a dangerous condition on its property because such a warning would constitute the regulation of traffic.

Plaintiff's point is granted. County's motion for summary judgment did not demonstrate that County was entitled to judgment as a matter of law. The judgment is reversed, and the case is remanded for further proceedings.

BARNEY, P.J., and LYNCH, J., concur.